IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEMETRIUS HARRIS                    *
                                    *
     Plaintiff,                     *
                                    *
vs.                                 *    CIVIL ACTION NO.15-00365-KD-B
                                    *
JLG INDUSTRIES, *et al.,*           *
                                    *
     Defendants.                    *

### Report and Recommendation

This matter, which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Plaintiff's Motion to Remand to State Court (Doc. 6) and Defendant JLG Industries' Motion to Strike (Doc. 17). Upon review of the motions, supporting and opposing briefs and materials, the undersigned **recommends** that the motions be **denied.**

### I.    Background

Plaintiff Harris filed suit in the Circuit Court of Mobile County, Alabama on July 23, 2014 for injuries he sustained while working as a sandblaster/painter in Coden, Alabama on or about August 11, 2012. (Doc. 1-1 at 3-5). According to Harris, he was performing sandblaster/painter duties for Rodriguez Boat Builders, Inc. (hereafter "Rodriguez Boat") at its Coden facility when a coworker ran over him with a forklift manufactured by JLG Industries, Inc. (Id.). Harris named as

1

Defendants JLG Industries, Inc., Marty McClure and April Rodriquez. He contends that the forklift, which was manufactured by JLG Industries, Inc. was defective and unreasonably dangerous. He further alleges that Defendants McClure and Rodriquez acted willfully, wantonly, recklessly and/or negligently in failing to maintain the safety features on the forklift, and failing to alert him concerning the lack of safety features. Harris avers that he sustained injuries to his left ankle and foot, was diagnosed with left Achilles open avulsion fracture, and required surgery. (Id. at 4). Harris requests punitive damages, compensatory damages, interest and court costs, and any "other relief that the Court may deem just and proper" against all Defendants. (Id. at 10, 13).

Defendant JLG Industries, Inc. ("JLG") removed the action to this Court on July 23, 2015. (Doc. 1). In the Notice of Removal, JLG asserts the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). According to JLG, Plaintiff Harris is a citizen of Alabama, and JLG is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Id. at 4). JLG contends that the citizenship of Defendants McClure and Rodriquez, who are both alleged to be resident citizens of Alabama, should be disregarded because Harris has settled his claims against these Defendants. (Id.) JLG contends that another reason for disregarding the Alabama

citizenship of McClure and Rodriquez is that they have been improperly joined in this action. JLG avers that Harris requested and received job benefits as an employee of Rodriguez Boat for his injuries pursuant to the Longshore Harbor Compensation Act ("LHWCA"); thus, he is precluded from suing McClure and Rodriquez, who were both employed by Rodriguez Boat at the time Harris sustained his injuries. (Id. at 7-12).

With respect to the amount in controversy, JLG asserts that while Harris has not requested a specific amount, it is clear that his alleged injuries will exceed $75,000 given that Harris has already required one surgery on his ankle, and that his attorney represented at a status conference in state court that there is a subrogation lien exceeding $100,000 for medical and other benefits already paid to Harris, and that his doctors have recommended that Harris undergo a second surgery in the near future. (Id. at 4-7). JLG thus contends that the amount in controversy exceeds the jurisdictional threshold and that there is complete diversity of citizenship. Therefore, the case was properly removed. JLG also asserts that the removal is timely because it was brought within one year of the filing of Harris' state lawsuit, and within 30 days of JLG ascertaining that the case was removable. (Id. at 2-3). JLG avers that during a status conference in state court on July 17, 2015, JLG first learned of Harris' settlement with McClure and Rodriquez. (Id.)

Harris filed a Motion to Remand to State Court on August 21, 2015. (Doc. 6). In his motion, Harris argues that removal is improper because JLG has not asserted nor produced any evidence that the individual Defendants, namely McClure and Rodriguez, consented to the removal. (Id. at 2). Harris further asserts that as of the date that this case was removed, namely July 23, 2015, no settlement agreement had been finalized between him and the individual Defendants; thus, McClure and Rodriguez are still parties to this action, and their status as Alabama residents means that complete diversity is lacking. (Id. at 3). Harris also contends that JLG's fraudulent joinder argument is without merit because at the time of the accident, Harris was employed by Peyton Boat Repair, Inc. (hereinafter "Peyton"), as opposed to JLG.  Harris asserts that while Peyton loaned him to Rodriguez Boat to work at the Rodriguez facility, on the date of the accident, he remained a Peyton employee.  Harris avers that because McClure and Rodriguez were not his co-workers, his claims against them are not barred.  Thus, they have not been fraudulently joined, and their presence in the lawsuit means that complete diversity is lacking. (Id. at 4-5).

In its response in opposition to Harris' Motion to Remand (Doc. 13), JLG argues that it is undisputed that Harris sought and received benefits from Rodriguez Boat under the LHWCA, and that Harris' admission that on the date of the accident, he was

"on loan" or in essence, a borrowed employee, with respect to Rodriguez Boat is sufficient to establish that his claims against individual Defendants Rodriguez and McClure, both employees of Rodriguez Boat, are covered under the LHWCA. (Id. at 3-7). Relying on Rodriguez-Flores v. U.S. Coatings, Inc., 133 So.3d 874 (Ala. 2013), JLG asserts that the LHWCA acts as an absolute bar against co-worker claims except where the employer had a specific intent or desire to injure the employee. According to JLG, individual Defendants Rodriguez and McClure have been fraudulently joined in Harris' lawsuit as the complaint is devoid of any assertion of a specific intent or desire to injure Harris. (Id.) Thus, the citizenship of Defendants Rodriguez and McClure should be disregarded. JLG further asserts that Rodriguez and Harris' consent was not required because they were fraudulently joined, and that in any event, Defendants Rodriguez and McClure did in fact consent through their counsel.

Finally, JLG asserts that the individual Defendants should be realigned as Plaintiffs because their employer Rodriquez Boats has asserted a lien against any proceeds received by Harris in this action based on the LHWCA benefits it paid to and on behalf of Harris, and due to the fact that the individual Defendants paid Harris a nuisance amount to settle this case. (Id. at 7-8).

5

In Harris' reply (Doc. 15), he argues, for the first time, that JLG's removal comes too late or too early. According to Harris, JLG was on notice regarding the LHWCA benefits paid to him as early as December 2014, when the settlement order was tendered to JLG's counsel in discovery; however, JLG did not seek to remove this case based on the LHWCA benefits until seven (7) months later. (Id. at 3-4). Harris further asserts that to the extent that JLG sought to remove this case based on his settlement with the individual Defendants, JLG did not come into possession of any 'other paper' justifying removal as required by 28 U.S.C. § 1446(b), until two (2) months after the motion was filed. Thus, the removal should be denied because it came too soon. (Id. at 6-7). Harris also argues that the individual Defendants did not file a motion to dismiss the claims against them; thus, JLG lacks standing to attack Harris' claims against Rodriguez and McClure. (Id. at 5).

JLG filed a Motion to Strike Harris' reply, and argues that Harris' newly raised arguments attacking the timeliness of the removal should not be allowed. (Doc. 17). According to JLG, Harris failed to raise his timeliness argument within 30 days of JLG's Notice of Removal; thus, his argument is untimely under Section 1447(c). JLG also argues that Harris should not be permitted to raise new arguments in his reply. (Id.) In the alternative, JLG requested an opportunity to file a sur-reply to

address the timeliness arguments. (Id.) JLG's request to file a sur-reply was granted, and in its sur-reply (Doc. 23), JLG argued that Harris' timeliness arguments have been waived because Harris failed to include them in his Motion to Remand. JLG also asserted that circuit precedent establishes that arguments raised for the first time in a reply are deemed waived. JLG further asserted that even if the Court concludes that Harris did not waive the timeliness arguments, the arguments should nevertheless be rejected because JLG filed its Notice of Removal within thirty days of receiving the Department of Labor's Order approving Rodriguez Boat and Harris' settlement under LHWCA. (Id.) JLG also avers that its Notice of Removal was filed within thirty days of receiving written confirmation from counsel for the individual Defendants that a settlement with Harris had been reached. Finally, JLG argues that a defendant's right to remove an action does not hinge on the actions of improperly joined state defendants. (Id.)

In his response to JLG's Motion to Strike, Harris argues that in his Motion to Remand, he preserved all of his arguments relating to the procedural and subject matter deficiencies with respect to JLG's removal. (Doc. 22) He further contends that he did not raise any new issues in his reply, but instead, simply pointed out the procedural problems with the documents that JLG seeks to rely upon in support of its Notice of Removal. (Id.).

7

The sum of these pleadings is now before the Court for analysis.

## II.  Analysis

### A. Standard of Review

A removing defendant has the burden of proving proper federal jurisdiction. See Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008); Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005)("In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.")(citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, "once a federal court determines that is without subject matter jurisdiction, the court is powerless to continue." Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1092 (11th Cir. 2010)(internal quotes omitted).

Where JLG, as the removing party, has predicated removal on diversity jurisdiction, it bears the burden of establishing complete diversity of citizenship and establishing by a preponderance of the evidence that the amount in controversy

exceeds $75,000.[1] <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1356 (11th Cir. 1996), overruled on other grounds by <u>Cohen v. Office Depot, Inc.</u>, 204 F. 3d 1069 (11th Cir. 2000)("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the. . .jurisdictional requirement."). Moreover, as a procedural matter, the removal must be timely. See <u>Clingan v. Celtic Life Ins. Co.</u>, 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003)("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be applied.'"); <u>cf.</u> <u>Moore v. North Am. Sports, Inc., Inc.</u> 623 F. 3d 1325, 1329 (11th Cir. 2010)("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.")

### B. Discussion

### 1. Whether there is diversity jurisdiction.

As noted *supra,* JLG has predicated removal on diversity

---

[1]    If damages are not specified in the state court complaint, the defendant seeking removal must prove by a preponderance of the evidence that "the amount in controversy more likely than not exceeds… the jurisdictional requirement." <u>Roe v. Michelin N. Am., Inc.</u>, 613 F.3d 1058 (11th Cir. 2010)(citation omitted). The court can look to the notice of removal and other "evidence relevant to the amount in controversy at the time the case was removed", and make "reasonable deductions" and "reasonable inferences" in its analysis. <u>Pretka v. Kolter City Plaza II, Inc.</u>, 608 F.3d 744, 754, 770 (11th Cir. 2010).

jurisdiction. Thus, it has the burden of establishing that all plaintiffs are completely diverse from all defendants, and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Triggs. V. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (llth Cir. 1998); Tapscott, 77 F.3d at 1357. Underwriters, 613 F. 3d at 1085. Turning first to the amount in controversy requirement, the undersigned observes that although no amount is stated in the complaint, the fact that the amount exceeds $75,000 is readily deducible as Harris alleges that he was run over by a forklift and suffered a fracture to his left ankle and foot as a result. Moreover, JLG contends and Harris does not dispute, that there is a subrogation lien for medical services and benefits provided to Harris in connection with said injury in an amount over $100,000. (Doc. 1-1 at 10-13). Under these circumstances, the undersigned finds that the jurisdictional threshold of $75,000 has been meet. The Court thus turns its attention to the question of whether there is complete diversity of the parties.

As the removing defendant, JLG has the burden of establishing complete diversity of citizen.[2] Harris is a citizen of Alabama; thus, JLG must establish that no properly joined

---

[2] While Harris has alleged the presence of fictitious defendants, the citizenship of any such defendants is disregarded for the purposes of determining diversity of citizenship. 28 U.S.C. § 1441(b)(1); Sellers v. Bolttech Mannings, Inc., 2013 WL 2635564 at *3 (S.D. Ala. June 11, 2013)(citations omitted).

defendant is a citizen of Alabama. (Id.). JLG was incorporated in Pennsylvania and has its principal place of business in Pennsylvania whereas the individual defendants, McClure and Rodriguez, are citizens of Alabama. (Docs 1, 1-1 at 3.) As noted *supra*, JLG argues that the individual Defendants have been fraudulently joined, such that their citizenship should be ignored in determining the existence of complete diversity. For purposes of determining complete diversity, courts will ignore any non-diverse party that was fraudulently joined, but the removing party has the "heavy" burden of proving fraudulent joiner. Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281(llth Cir. 2006); Buxton v. Wyatt, 2008 U.S. Dist. LEXIS 94035 (N.D Ala. Nov. 19, 2008)(citing Crowe v. Coleman, 113 F.3d 1536, 1538 (llth Cir. 1997). Thus, this Court must determine whether Defendants McClure and Rodriguez were properly joined in this action.

In reviewing a claim of fraudulent joinder, the Court must evaluate the parties' factual allegations and submissions in the light most favorable to a plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. Crowe, 113 F. 3d at 1538. The court's inquiry must be based upon "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139

11

F.3d 1368, 1380 (11th Cir. 1998). While some courts have noted that the proceeding appropriate "for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)", the Eleventh Circuit has stressed that "the jurisdictional inquiry 'must not subsume substantive determination'. . .[and w]hen considering a motion to remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538. See also Triggs, 154 F.3d at 1287 (The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.)

Under Eleventh Circuit precedent, a defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate that:

> (1) there is no possibility that the plaintiff can prove a cause of action against the [non-diverse or] resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Id. . . .

Henderson, 454 F.3d at 1281.

In this case, JLG contends that Defendants McClure and Rodriguez were fraudulently joined because they were Harris' co-

workers, and as such, a suit against them is barred under LHWCA. LHWCA is a federal no-fault workers' compensation program that provides compensation for the death or disability of an employee "occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining areas customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel.)"   33 U.S.C. § 903 (a).  This compensation is payable "irrespective of fault".  33 U.S.C. §904.   The Act's statutory scheme represents a "legislated compromise between the interests of employees and the concerns of employers." Wash. Metro. Area Transit Auth. v. Johnson, 467 U.S. 925, 931, 104 S. Ct. 2827, 81 L. Ed. 2d 768 (1984). In other words, "there is a quid pro quo." Id. "In return for the guarantee of compensation, the employees surrender common-law remedies against their employers for work-related injuries," while the employers gain "immunity from employee tort suits." Id. The statutory text codifies this legislative compromise by making statutory remedies exclusive. Section 905(a) of the Act provides, in part, that:

> The liability of an employer prescribed in section 904 of [the LHWCA] shall be exclusive and in place of all other liability of such employer to the employee. . .at law or in admiralty on account of such injury or death. . .

33 U.S.C. § 905 (a).   Thus, employers enjoy immunity from tort claims under the LHWCA like they do under the state workers compensation laws. Ex parte Shelby Cnty. Health Care Auth., 850 So.2d 332, 338 (Ala. 2002) (stating that the Act provides immunity from common lawsuits for those employers and carriers who come within the Act and makes it clear that the Act is an exclusive remedy only in situations where an employee is suing his employer for injuries sustained in the course of his employment). This immunity is extended by the LHWCA to include co-employee actions. § 933 (i).   § 933(i) provides that:

> "The right to compensation under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, *by the negligence or wrong or any other person or persons in the same employ:* Provided, that this provision shall not affect the liability of a person other than an officer or employee of the former employer. [Emphasis added]

§ 933(i). The Alabama Supreme Court, in Fillinger v. Foster, 448 So.2d 321 (Ala. 1984) addressed the reach of this provision, and held that an employee who sued his co-employee for injuries he suffered while working as a ship fitter at a land-based operation was prohibited from suing his co-employee for injuries sustained on the job under the LHWCA.   In reaching this conclusion, the Court found that because the LHWCA and Alabama's worker's compensation law was in conflict with respect to the maintenance of co-employee suits, the LHWCA preempted Alabama's

worker's compensation law.  Later in Rodriguez-Flores, v. U.S. Coatings, Inc., 133 So.3d 874 (Ala. 2013), the Alabama Supreme Court observed that although § 25-5-11(b), Ala. Code 1975, allows for co-employee suits in certain limited circumstances involving willful conduct, such suits are barred by the exclusivity provisions of the LHWCA.

Also, in Langfitt v. Federal Marine Terminals, 647 F.3d 1116 (llth Cir. 2011), the Eleventh Circuit had occasion to discuss the borrowed servant doctrine in the context of LHWCA. In Langfitt, a worker who was injured while loading a cargo ship sought and received LHWCA benefits from the day labor company that had furnished him to the defendant company for longshore services.  Seeking to supplement the LHWCA benefits that he had received from the day labor company, the plaintiff worker sued the defendant longshore company claiming that its employees had caused his injury.  In response, the defendant longshore company argued that for purposes of the LHWCA, it was the plaintiff's employer, and therefore immune from suit under the LHWCA. In resolving the case, the Court held that the borrowed-servant doctrine has been recognized in the LHWCA context, and that if a covered employee is determined to be a borrowed-servant, then the borrowing employer is liable to the injured borrowed-servant, but is also immune from all tort liability under the Act's exclusivity provisions.  The court conducted a fact

intensive analysis and determined that the employee was in fact a borrowed servant at the time of his injury.

The above cases make clear that if Harris is covered under the LHWCA, and is deemed an employee of Rodriguez Boats, he is prohibited from maintaining an action against Defendants McClure and Rodriguez for his workplace injuries because there is no dispute that both individual defendants were employed by Rodriguez Boats at the time Harris sustained his injuries. In an effort to escape the exclusivity provisions of the LHWCA, Harris argues that while he may have been loaned to Rodriguez Boats on the date of his accident, he remained an employee of Peyton Boats. His argument lacks merit. First of all, Harris does not dispute JGL's assertion that Harris applied for and received medical and other benefits from Rodriguez Boats pursuant to the LHWCA. Further, discovery materials produced to JGL and submitted to the Court include a copy of a Department of Labor Order approving the LHWCA settlement between Harris and Rodriguez Boats. (Doc. 13-1). In the DOL Order, the parties admit that on the day of the accident, Harris was "in the Employ" of Rodriguez Boats, and "while performing services for Payton Boat/Rodriguez Boat Builders as a sandblaster/painter" at Rodriguez Boat Builders, Inc. in Coden, Alabama", Harris was injured when a coworker ran over his left ankle while operating a forklift. (Id.). The DOL Order also sets forth the injuries

sustained by Harris, and the terms of Harris and Rodriguez Boats' agreement for the payment of medical and other benefits to Harris pursuant to the LHWCA.   In the Order approving the agreement, the DOL District Director determined that the settlement was adequate and not procured by duress, and that Rodriquez Boat's liability under the LHWCA would be discharged. Having agreed that he was a borrowed employee in the employ of Rodriquez Boat on the day of the accident, in order to take full advantage of the benefits from Rodriquez Boats under the LHWCA, Harris cannot now repudiate his employment status in an effort to avoid the LHWCA's exclusivity provision barring co-employee suits.   To find otherwise would allow Harris to frustrate the LHWCA's purpose of guaranteeing compensation for employees in return for the surrender of their claims arising from work-related injuries. See Langfitt, 647 F.3d at 1125 ("..the LHWCA, like all workers' compensation laws, represents a policy-based tradeoff, or statutorily imposed "industrial bargain".)

In addition, Harris' contention that Defendants McClure and Rodriguez acted willfully, even if true, does not change the outcome because as noted *supra*, Alabama courts have determined that the LHWCA preempts Alabama law to the extent that the LHWCA bars both the negligent and willful acts of co-workers whereas Alabama's worker's compensation law does not bar employee suits alleging willful acts by co-employees. See Rodriguez, 133 So.3d

874 at 881 ("Although § 25-5-11(b), Ala. Code 1975, allows for co-employee suits in certain limited circumstances involving willful conduct, this Court has held that such suits are barred by the exclusivity provisions of the LHWCA where the accident falls within the twilight zone of concurrent jurisdiction and the scope of the LHWCA. Fillinger v. Foster, 448 So.2d 321 (Ala. 1984).") Accordingly, the undersigned finds that Harris has no possibility of recovery against neither McClure nor Rodriguez. Therefore, for purpose of determining diversity, their citizenship is to be disregarded. Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006)("[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of non-diverse defendant and deny any motion to remand the matter back to state court."). Given that Harris is a citizen of Alabama and JGL is a citizen of Pennsylvania, and that the $75,000 jurisdictional amount is met, the undersigned finds that this court has jurisdiction to hear this case under 28 U.S.C. § 1332[3].

### 2.  Whether the Removal of this Action was Timely

In his reply, Harris argues for the first time that the

---

[3] In light of this finding, the Court does not reach JLG's argument that Harris' claims against McClure and Rodriguez should be disregarded because Harris has settled his claims against these Defendants.

removal was untimely. (Doc. 15). JLG argues that this argument should be stricken because it was raised for the first time in Harris' reply. (Doc. 17) The undersigned recognizes that generally, "[p]arties cannot raise new issues in reply briefs." United States v. Krasnow, 484 Fed. Appx. 427, 429 (11th Cir. 2012). However, as observed in RC Lodge, LLC v. S.E. Property Holdings, 2012 U.S. Dist. LEXIS 98199 (S.D. Ala. July 16, 2012), while the court "does not ordinarily consider arguments first raised in a reply, . . .by affirmatively seeking leave to file a sur-reply,. . .and then doing so, [the objecting party] engaged the argument and undermined the rationales supporting the Court's general practice." RC Lodge, 2012 U.S. Dist. LEXIS 98119; See also, International Telecommunications Exch. Corp. v. MCI Telecommunications Corp., 892 F. Supp. 1520, 1531 (N.D. Ga. 1995) (stating that when a party raises new arguments in a reply brief, "the Court may either strike the new grounds or permit the non-moving party additional time to respond to the new argument."). In this case, JGL sought to have Harris' reply stricken, and in the alternative, requested an opportunity to respond. JGL was granted an opportunity to respond to the new issues raised in Harris' reply, and did in fact file a response; thus, the undersigned **denies** JGL's request to strike, and will consider the timelines argument raised in Harris' reply, and JGL's response.

In his reply, Harris argues that the removal was untimely because JLG was on notice regarding his receipt of LHWCA benefits as early as December 2014 when the DOL settlement order was tendered to JLG's counsel in discovery; however, the case was not removed to this Court until seven (7) months later in July 2015. Harris further argues that his settlement with the individual defendants did not occur until *after* removal; thus, removal based on the settlement was premature.  JGL argues that Harris waived the timeliness argument because it was raised more than 30 days after the removal of the case. (Doc. 17 at 3-5). JLG further argues that in any event, the removal was timely.

A party must remove a case within thirty days of receiving "an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable."   28 U.S.C. § 1446(b) [4] . Upon removal of an

---

[4] 28 U.S.C. § 1446(b) provides in pertinent part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by defendant, through

action to federal court, 28 U.S.C. §1447(c) implicitly recognizes two bases upon which a district court may. . .order a remand; when there is (1) a lack of subject matter jurisdiction or (2) a defect other than a lack of subject matter jurisdiction." Hernandez v. Seminole Cty., 334 F.3d 1233, 1236-37 (11th Cir. 2003)(citation omitted). § 1447(c) provides, in pertinent part, that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at ay time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

> 28 U.S.C. § 1447(c).

> Courts have repeatedly held that the timeliness of removal is a procedural defect, not a jurisdictional one, see Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751-52 (11th Cir. 2010), and that failure to comply with § 1447 (c) waives any

---

service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is removable, except that a case may not be removed on the basis of jurisdiction conferred by *section* 1332 of this title more than 1 year after commencement of the action.

objection to a procedural defect[5]. RC Lodge, LLC v. SE Property
Holdings, Inc., 2012 U.S. Dist. LEXIS 98199 (S.D. Ala. July 16,
2012)(citing Wilson v. General Motors Corp., 888 F.2d 779, 781
n.1(llth Cir. 1989)). The Court has broad discretion to decide
whether a party has waived a procedural defect. See Piper
Jaffray & Co. v. Severini, 443 F. Supp. 2d 1016, 1020 (W.D. Wis.
2006)("[a] district court has broad discretion in deciding
whether a plaintiff has waived its right to object to procedural
irregularities in removal proceedings."); Premier Holidays
International, Inc. v. Actrade Capital, Inc., 105 F. Supp. 2d
1336, 1339 (N.D. Ga. 2000) ("this court has the discretion to
deny remand even where the removal is untimely").

     In this case, there is no question that Harris filed his
motion seeking remand within 30 days of JLG's Notice of Removal.
The rub is that while the Notice of Removal expressly alleged
that it was timely filed, Harris sought remand on the sole
ground that Defendants McClure and Rodriguez had not consented
to the removal. It was only in its reply, filed some 59 days

---

[5] The distinction between jurisdictional and procedural defects
is important because while motions challenging a removal on the
basis of the absence of subject matter jurisdiction may be
brought as any time, a "motion to remand the case on the basis
of any defect other than lack of subject matter jurisdiction
must be made within 30 days after the filing of the notice of
removal." See 28 U.S.C. §1447(c); see also Lowery v. Alabama
Power Co., 483 F.3d 1184, 1213 n.64(11th Cir. 2007)("Plaintiffs
have only 30 days from the notice of removal to file a motion to
remand challenging any procedural defects in the removal. . .").

*after* the Notice of Removal, that Harris argued that the removal was untimely.   Courts are split over the issue of whether the timely filing of a motion to remand alleging a procedural defect, such as lack of unanimity, is sufficient to preserve a timeliness or other procedural objection under § 1447(c).   In Northern California Dist. Council of Laborers v. Pittsburh-Des Moines, 69 F. 3d 1034 (9th Cir. 1995), the Ninth Circuit held that where the plaintiff's remand motion was filed within thirty days, but no defect in the removal procedure was ever raised until a reply brief more than thirty days after the removal petition, the plaintiff had waived any procedural objections. The court reasoned that "the purpose of the 30-day time limit is to 'resolve the choice of forum at the early stages of litigation,' and to 'prevent the "shuffling of cases between state and federal courts after the first thirty days.'"" Id. at 1038 (citations omitted).   The court thus concluded that the defect in removal must be raised "promptly" or the statutory purpose would be defeated. Id.

The Fifth Circuit has taken the opposite view, and in BEPCO, L.P. v. Santa Fe Minerals, Inc., 675 F.3d 466, 471 (5th Cir. 2012), the court rejected "any suggestion that the timing of the presentation of a removal defect- - -rather than the submission of the remand motion- -is what matters for a timeliness analysis under § 1447 (c).   There is no controlling

precedent in this circuit, but in RC Lodge, LLC v. S.E. Property Holdings, LLC, 2012 U.S. Dist. LEXIS 98199 (S.D. Ala. July 16, 2012), the court discussed the conflict. In that case, the plaintiffs' motion to remand only raised lack of subject matter jurisdiction; however, 52 days later, they argued that remand was required because all the defendants had not consented to the removal. In RC Lodge, the court recognized the conflict, and observed that:

> The Fifth Circuit found § 1447 (c) unambiguous in this respect, 675 F.3d at 471, but the Court is not so sure. After all, the sort of motion to remand that must be filed within 30 days of removal is specifically described as one "on the basis of any defect" in removal procedure. A motion to remand that asserts no defect in removal procedure cannot easily be characterized as one made "on the basis" of such a defect. In the Court's view, this language renders the statute at least ambiguous and so opens the door to examination of its purpose in order to resolve the ambiguity. The Ninth Circuit considered that purpose and found it to bolster its reading of the statute. 69 F.3d at 1038.

2012 U.S. Dist. LEXIS 98199.

The court ultimately decided that it was not necessary to resolve the issue because the defendant had not argued that the plaintiffs' consent argument was untimely under § 1447 (c). RC Lodge, 2012 U.S. Dist. LEXIS 98199. Several courts that have resolved the issue have endorsed the reasoning set forth in Pittsburg-Des Moines, and have held that an attack on the timeliness of removal, first raised more than 30 days after a

notice of removal, is waived. See Engh v. the Carpenters & Joiners Welfare Fund, 2007 U.S. Dist. LEXIS 85882 (D. Minn. Nov. 20, 2007)(court refused to entertain the plaintiffs' argument that remand was necessary due to untimeliness of the removal notice when plaintiff's first raised the issue in its reply brief almost two months after the removal notice was filed.); Hoste v. Shanty Creek Mgmt., Inc. 246 F. Supp. 2d 776, 780 (W.D. Mich. 2002)(holding that the plaintiff's assertion of untimeliness was untimely when first raised 36 days after the notice of removal was filed, despite the timely filing of a remand motion.); see also, Clark v. USAA Casualty Insurance Co., 2015 U.S. Dist. LEXIS 155947 (M.D. Fla. Nov. 18, 2015)(court held that the plaintiff waived any objection to the timeliness of a removal where the issue was not raised in his motion to remand but was instead raised for the first time at a hearing four months later.); Robinson v. Affirmative Ins. Holdings, Inc., 2013 U.S. Dist. LEXIS 28306 (N.D. Ala. March 1, 2013)(by filing a motion to remand challenging only the amount in controversy, plaintiff expressly waives any objection to defendants' untimely removal.).

In this action, Harris offers no explanation for his failure to include a timeliness argument in his motion to remand. Indeed, there has been no assertion or showing that Harris was not aware of the facts supporting his timeliness

argument until sometime *after* the filing of his motion to remand. Accordingly, based on the rationale of <u>Northern California Distric Council of Laborers v. Pittsburg-Des Moines Steel Co.</u>, 69 F.3d 1034, 1038 (9th Cir. 1995), the undersigned finds that Harris waived the timeliness argument. Thus, his motion to remand is due to be **denied.**

### III. Conclusion

For the reasons set forth above, the undersigned finds that the Defendants have met their burden of establishing the existence of diversity of citizenship, as necessary to support diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion to Remand be **DENIED**, and that Defendant's Motion to Strike **DENIED.**

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

### <u>Notice of Right to File Objection</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.Civ.P. 72(b); S.D. ALA. GenLR 72(c). The

Parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interest of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this **11th** day of **January, 2016.**

                           **/s/ SONJA F. BIVINS**
                        **UNITED STATES MAGISTRATE JUDGE**