**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| DEMETRIUS HARRIS, | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION: 15-00365-KD-B |
| v. | ) | |
| | ) | |
| JLG INDUSTRIES, | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Plaintiff's Motion to Strike the Deposition Errata of Brent Hoover (Doc. 59) and Defendant's Response (Doc. 65); Plaintiff's Motion to Strike the Affidavit of Brent Hoover (Doc. 70) and Defendant's Response (Doc. 75); and Defendant's Motion for Summary Judgment (Doc. 60), Plaintiff's Response (Docs. 66 (SEALED), 69), Defendant's Reply (Doc. 71) and Plaintiff's Sur-Replies (Doc. 78).

## I.    **Findings of Fact**[1]

On August 11, 2012, Peyton Boat employee Demetrius Harris (Harris) sustained on-the-job injuries in Coden, Alabama while sub-contracted out to Rodriguez Boat Builders, when a coworker ran over his left ankle and foot with a forklift.   The forklift in question is a SkyTrak Model 8042 rough terrain forklift.   The forklift was designed by Trak International (Trak) in 1992 and sold by Trak in early 1999 to Gaedcke Equipment.   In 2003, JLG acquired certain assets and liabilities of Trak International.   When sold by Trak, the forklift was equipped with a functioning backup alarm that sounded when placed in reverse, rearview mirrors

---

1 At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

on the right and left side of the operator's cab, and two manuals (an EMI Rough Terrain Forklift Safety Manual and the SkyTrak Model 8042/10042 Owners/Operators Manual).   Before January 2012, the forklift was acquired by Rodriguez Boat Builders.

The details regarding Harris' accident consist of the following: On August 11, 2012 Harris was walking across the Rodriguez job site to speak with supervisor Ryan Peyton (Fruit), who was standing near the forklift.   (Doc. 60-8 (Dep. Harris at 112-114, 125)).   As Harris walked towards Fruit, another employee (Ralph Raley) drove the forklift in a forward direction. (Id. at 115, 118, 125).   The forklift passed within 3-7 feet of Fruit, continued past him, and then stopped.   (Id. at 126, 128, 138).   Once it stopped, Fruit was off to the right side of the forklift, 10-20 feet away.   (Id. at 130).   Harris was standing to the side of the forklift's right rear tire, talking to Fruit for 2-4 minutes, only an arm's length away -- close enough to touch the right rear wheel.   (Id. at 130-131, 142-143).   Harris did not hear the forklift engine turn over or the noise of the engine stop while talking to Fruit, so he believes it was running the entire time.   (Id. at 136, 138-139).   Harris did not see any change of position of the forklift boom and did not hear a backup alarm.   (Id. at 73, 143).   Harris then heard Fruit say "oh shoot[,]" prompting him to turn around and see the forklift moving, at which time he tried to get out of the way, but the forklift backed over his left ankle before he could move, resulting in an Achilles' tear and avulsion to his left foot/ankle.   (Id. at 135, 141).

The Monday following the accident, Rodriguez's mechanic Marty McCluer (McCluer) inspected the forklift's backup alarm and mirrors, and made some repairs to the forklift's backup alarm.   (Doc. 69-2 (Dep. McCluer at 17-18, 28-33, 36-37, 41, 49, 53)).   McCluer noted that the backup alarm's wiring harness had come into contact with the hot engine, and it had burned

loose.   (Id. (Dep. McCluer at 29-33)).    The backup alarm wire was also causing itself to short

out and so McCluer rerouted the alarm's wiring harness.    (Id.)   McCluer also inspected the

mirrors, which were in the same place as they were at the time of the accident.    (Id. (Dep.

McCluer at 53)).

On July 23, 2014, Harris initiated this action in the Circuit Court of Mobile County,

Alabama (CV-2014-902132, *Demetrius Harris v. Marty McClure et al.*), for the injuries he

sustained.    (Doc. 1-1).    Harris alleges the following claims against Defendant JLG Industries[2]

(JLG), the alleged manufacturer of the fork lift: negligence, gross negligence and wantonness

(Count 1); AEMLD product liability (Count 2); and breach of warranty (Count 3).[3]   Harris

asserts that the forklift was defective because it lacked a properly functioning backup alarm and

an unobstructed rearview mirror, and also asserts a failure to warn claim.    (Doc. 1-1 at ¶ 11).

Specifically,

-Harris claims a mirror located on the right-hand side of the forklift could have been
obscured by the extendable boom of the forklift, if the boom was in the lowered position.

-Harris contends due to the owner's lack of maintenance and repair, the backup alarm did
not function or sound on the day of the accident. Harris claims the wiring and wiring
harness to the backup alarm is defective in its design.

-While acknowledging that the owner and operators of the forklift did not repair the
malfunctioning backup alarm, Harris claims the 1999 Trak manuals and warnings did not
instruct operators to check the functioning of the backup alarm as part of a required daily
prestart inspection. Harris also alleges the manuals and warnings failed to warn of the
possibility the mirrors could become obstructed.

On July 23, 2015, JLG (and others) removed this action to this Court on the basis of

federal diversity subject matter jurisdiction. (Doc. 1).    JLG now moves for summary judgment.

---

2  Claims were also alleged against other defendants who have been dismissed.

3  While Harris alleged other claims, they were not alleged against JLG.

3

II.     **Motions to Strike & Rule 56(c)(2) Objections**

    A.     **Motions to Strike**

Harris filed two (2) motions to strike, one as to the deposition errata sheet of Brent Hoover and another as to the Affidavit of Brent Hoover (Hoover).[4]   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, motions to strike on summary judgment have not been appropriate since December 2010.   Instead, per Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."   The Advisory Committee Notes specify that:

> Subdivision (c)(2) provides that ***a party may object*** that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. ***There is no need to make a separate motion to strike***. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, *Adv. Comm. Notes*, "Subdivision(c)" (2010 Amendments) (emphasis added).

The Court thus construes Harris' motions to strike as Objections.

    1.     **Hoover Deposition Errata**

In relevant part, JLG submits the following errata to Hoover's deposition:

| Page | Line | Testimony to Change | Errata Change | Reason |
|------|------|--------------------|--------------|--------|
| 18 | 24 | It appeared it was | No. After further review of parts manual and engineering drawing, the mirror is an unauthorized modification. | Was not aware of exact specifications at time of my inspection. |
| 33 | 12 | I believe that it did | It did at the time of manufacture. | To clarify the record regarding the unauthorized modification. |

---

4  Hoover is JLG's Director of Product Safety and Reliability.   (Doc. 60 at 17).

Harris objects to the errata related to pages 18 and 33 of Hoover's prior deposition testimony[5] concerning "whether the right hand mirror was original manufacturer's equipment."   At his deposition, Hoover testified as follows:

> Q      … did you inspect the right-hand mirror on the subject model lift?
> A      Yes, sir, I did.
> Q      …Was the right-hand mirror original SkyTrak model equipment?
> A      It appeared that it was.
> ***
> Q      …Would the model involved in this incident, would it have had a convex mirror on the right-hand side?
> A      I believe that it did.

(Doc. 59 at 1-2; Doc. 59-2 at 18 and 33 (Dep. Hoover)).

Rule 30(e)(1-2) of the Federal Rules of Civil Procedure provides as follows:

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) **if there are changes in form or substance**, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

Fed.R.Civ.P. Rule 30(e)(1-2) (emphasis added).   The parties do not dispute that the errata sheet was timely submitted.   Rather, Harris contends the errata sheet is an attempt to materially alter Hoover's prior sworn testimony (i.e., changes in substance).[6]   JLG asserts that it is a

---

5 Harris disputes the errata for Page 20, but there is no errata sheet for Page 20.   JLG submitted an errata for Page 26, but Harris has not asserted any objection to the errata for that page.

6 Within the Eleventh Circuit there is a split authority on the issue of whether substantive changes are permitted. Unlimited Resources, Inc. v. Deployed Resources, LLC, 2010 WL 55613, *3 (M.D. Fla. Jan. 5, 2010). Some courts have adopted a narrow reading of Rule 30(e) to hold that absent obvious confusion during a deposition changes that are not the result of typographical or transcriptional errors should be stricken. Id. (citing Reynolds v. I.B.M. Corp., 320 F.Supp.2d 1290, 1301 (M.D. Fla. 2004).   The Eleventh Circuit has not spoken to this issue directly.   But recently in Norelus v. Denny's, Inc., 628 F.3d 1270, 1273 and 1281 (11th Cir. 2010) the court assessed

*clarification* of his prior testimony and is *cumulative* given the other evidence submitted on summary judgment, adding that based on additional evidence it has submitted "the Court need not consider Mr. Hoover's errata sheet testimony in ruling on JLG's pending motion for summary judgment." (Doc. 65 at 3 at note 1, and 12). Per JLG's representation, the Court construes Hoover's errata sheet as withdrawn on summary judgment, rendering Harris' Objection (Doc. 59) **MOOT,** as the Court will not consider same at the present time.

### 2.   <u>Hoover Affidavit</u>

Concerning Hoover's Affidavit (Doc. 60-1 (Aff. Hoover)), Harris asserts that it is a sham,[7] contradicting his prior sworn deposition testimony. (Doc. 70). Harris also contends

---

sanctions for submitting a "novella-length errata sheet making a slew of material changes to deposition testimony[.]" In so holding, the Eleventh Circuit did not make a specific ruling as to whether substantive changes could be made to deposition testimony via errata. However, there are a line of cases within the Eleventh Circuit that have adopted the broader view – allowing for substantive changes. <u>See, e.g.</u>, <u>Unlimited Resources</u>, 2010 WL 55613, *3; <u>Cultivos Yadran S.A. v. Rodriguez</u>, 258 F.R.D. 530 (S.D. Fla. 2009); <u>Purdee v. Pilot Travel Centers, LLC</u>, 2007 WL 3143716 (S.D. Ga. Oct. 23, 2007)). As noted in <u>Unlimited Resources</u>, a broad reading of the Rule was influenced by the text of the Rule, which explicitly refers to changes in substance. <u>Id</u>. Additionally, the Court found persuasive the safeguards used by many of the courts adopting a broad interpretation of the Rule to prevent abuse, such as: 1) allowing the original deposition answers to remain part of the record and to be read at trial; and 2) permitting the reopening of the deposition to address the changes and requiring the party making the changes to bear the costs of the reopening of the deposition. <u>Id</u>. Such measures were taken in the case of <u>United Subcontractors, Inc. v. Darsey</u>, 2013 WL 5770559, *2 (M.D. Fla. Oct. 24, 2013) "so that the trier of fact may determine the reliability of the testimony." <u>Cf</u>. <u>In re Trasylol Products Liability Litigation</u>, 2010 WL 5151579, *8 (S.D. Fla. Nov. 16, 2010) ("Courts may disregard errata sheets…where the corrected testimony contradicts the original testimony, and Plaintiffs fail to provide a sufficient justification for the change…. Here…[the] errata sheets…directly contradict the substance of [the]… initial testimony…. contradictory corrections cannot establish a genuine issue of material fact where the original testimony did not create one[]"); <u>ChemFree Corp v. J. Walter, Inc.</u>, 2008 WL 5234247, *2 (N.D. Ga. Sept. 30, 2008) ("many courts agree that substantive changes to deposition testimony are particularly suspect when they are offered in response to a motion for summary judgment. *See Hambleton Bros.*, 397 F.3d at 1225 ("While the language of FRCP 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."); <u>Purdee</u>, 2007 WL 3143716, at *2 n. 2 ("The Court reserves the question of whether these errata alterations may be relied upon to create a material factual dispute at the summary judgment stage of litigation. While plaintiff is free to make substantive errata changes that contradict her prior deposition testimony, the Court is not necessarily precluded from disregarding such changes in deciding a motion for summary judgment

7 Under the law of this Circuit, "we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." <u>McCormick v. City of Ft. Lauderdale</u>, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003); <u>Fisher v. Ciba Chem. Corp.</u>, 238 F.R.D. 273, 284 (S.D. Ala. 2006) (explaining and applying "sham affidavit" rule). Specifically, Rule 56(e) requires that a party opposing a properly supported motion for summary judgment set forth specific facts, admissible

that the Affidavit improperly contains expert opinion testimony yet Hoover is not an expert.

The issue of Hoover's testimony regarding the modification of the mirror is **MOOT** as the plaintiff's expert has provided sufficient evidence to create an issue of fact as to whether the mirror was original.

However, Harris' objection to Hoover's opinion regarding whether the wiring system for the backup alarm was the original system is well taken.   As JLG indicates, Hoover's opinion is based on his knowledge of electrical systems and his review of the electrical diagrams and the testimony of McCluer.   (Doc. 75 at 11).   This is a classic description of how an expert renders an opinion.   Hoover's opinion cannot be classified as a lay opinion.   Therefore because he is not a designated expert this testimony will not be considered on summary judgment.   Thus, Harris' Objection (Doc. 70) is **SUSTAINED**.

## B. Rule 56(c)(2) Objections

In its Reply, JLG asserts Rule 56(c)(2) objections to Harris' Exhibits PX6, PX11, PX13, PX14, PX15, PX16 and PX19 (Docs. 69-8, 69-11, 69-13, 69-14, 69-15, 69-16, 69-20),[8] contending that they are inadmissible material offered in support of Harris' summary judgment response.   JLG describes the evidence as lacking authentication and foundation, including images "harvested from the internet" without "proof and identification," and noting that the

---

as evidence, showing the existence of a genuine issue for trial. The rule specifically allows the court to consider pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits submitted by the opposing party in determining whether a genuine issue exists.   However, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."   Van T. Junkins and Assoc., Inc., 736 F.2d 656, 657 (11th Cir. 1984). To be stricken as a sham, an affidavit must be inherently inconsistent.   See, e.g., Rollins v. TechSouth, Inc., 833 F.2d 1525 (11th Cir. 1987).

8 PX6-photograph of Caterpillar equipment with additional mirror(s); PX11-Ralph Raley affidavit/declaration;   PX13-patent for convex mirror;   PX14-photograph of smaller convex mirror; PX15-.photograph of Kato equipment with right side mirrors; PX16-photograph #551 to Hoover's deposition (Bates# "JLG000551 Harris"); and PX 19-McEachern Declaration.

machines shown in PX6 and PX16 are not even forklifts.   (Doc. 71 at 3-8).   JLG also objects

to PX11 (Affidavit/Declaration of Ralph Raley) as defective due to the absence of a notary's

signature, a scrivener's error for the date, and as vague and conclusory.   (Id.)   JLG further

objects to the Declaration of Harris' expert, McEachern, (PX19) and the attached photographs as

containing conclusory statements lacking foundation and as lacking authentication.   (Id.)

Rule 56(c)(2) provides that "[a] party may object that the material cited to support or

dispute a fact cannot be presented in a form *that would be admissible* in evidence." Fed.R.Civ.P.

Rule 56(c)(2) (emphasis added).   At this stage – on summary judgment -- Harris is not required

to furnish evidence in admissible form, but only such evidence that *can be reduced to admissible*

*form at trial*.[9]   Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005); Johnson v.

Mobile Infirmary Med. Ctr., 2015 WL 1538774, *1 (S.D. Ala. Apr. 7, 2015); Abbott v. Elwood

Staffing Services, Inc., 44 F.Supp.3d 1125, 1135 (N.D. Ala. 2014).

On Sur-Reply Harris asserts the exhibits have been authenticated, foundation has been

provided and/or properly submitted pursuant to Rule 56(c)(1) and that many of the exhibits are

part of the deposition transcripts taken in this case.   (Doc. 78).   According to Harris: 1) PX6

was an attachment, namely "Def's Ex. 44," to McEachern's deposition (Doc. 69-5 (Dep.

McEachern at 265)); 2) PX11, the Raley Declaration submitted per Rule 56(c)(1)(4), was filed in

---

9 For example, courts may consider hearsay on summary judgment so long as the statement can be reduced to admissible form at trial. See, e.g., Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-1294 (11th Cir. 2012) ("a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form[ ]"); Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999) (same). Similarly, even unauthenticated or otherwise inadmissible evidence is properly considered on summary judgment so long as it can be reduced to admissible form at trial. See, e.g., Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (on summary judgment, courts consider "evidence which can be reduced to an admissible form"); Longrier v. HL–A Co., Inc., 595 F.Supp.2d 1218, 1223 (S.D. Ala. 2008) ("The general rule in this Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial[ ]").

redacted form and a notary is not required for a declaration which already provides that it is signed "under penalty of perjury[;]" 3) PX13-PX15 are exhibits attached to JLG employee Hoover's deposition (Doc. 59-2 (Dep. Hoover at 33-36)); 4) PX16 is a photograph taken by Hoover, produced by JLG, and attached to his deposition; and 5) PX19 is a set of photographs authenticated by McEachern's declaration (Doc. 69-20).

In light of the purpose behind Rule 56(c)(2) objections and the explanations provided in Harris' Sur-Reply, the Court finds that JLG's Objections to PX6, PX11, PX16 and PX19 lack merit and are **OVERRULED**.[10] However, as to PX13, PX14 and PX15, the Objections are **SUSTAINED** as to admissibility. The fact that they were attached to a deposition does not establish a proper foundation for admission.   To the extent they are demonstrative, the court has reviewed the exhibits.

## III.   Conclusions of Law

## A.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   Rule 56(c) provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>      **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

10 In its Reply, JLG also states that it will be moving, in the future, to exclude McEachern as Harris' expert witness in this case attacking his credibility, opinions and the basis for his opinions (methodology).   (Doc. 71 at 3-7). To the extent JLG's argument could be construed as an objection to McEachern as an expert, such is **OVERRULED** at this time as it is not properly supported.

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

Defendant, as the party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment.   Celotex, 477 U.S. at 323.   In assessing whether the nonmovant has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"   Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 999 (11th Cir. 1992).

10

B.    **Discussion**[11]

1.    **Negligence, Wantonness & AEMLD**

Harris initiated this action against JLG for negligence, gross negligence and wantonness, AEMLD product liability and breach of warranty based on injuries sustained when a forklift was accidentally driven over his left ankle.   Harris alleges the forklift is defective because it lacks a properly functioning backup alarm and unobstructed mirror, and because it fails (via manuals) to warn operators of the obstructed views, and further fails to warn owners to maintain the alarm. To support his claim, Harris relies on the expert testimony and April 2014 forklift inspection results of licensed Alabama Professional Engineer J. Albert McEachern (McEachern). Specifically, McEachern asserts that the forklift's right-hand mirror's placement is a design flaw and that the forklift's backup alarm wiring and wiring harness are defective. McEachern also asserts that the manuals should have included a warning to maintain the backup alarm.   (Doc. 69-5 (Dep. McEachern); Doc. 69-9 (Report); Doc. 69-20 (Decltn. McEachern)).

In response, JLG contends that Harris' claims lack merit because:

-Harris cannot establish the mirror, wiring and/or wiring harness to the backup alarm are defective.

-Harris cannot prove the forklift is in substantially the same condition on the day of the accident as it was at the time of manufacture and sale in 1999, to support an AEMLD claim. Specifically, JLG alleges that the right-hand mirror on the forklift was an unauthorized substantial modification and that Harris cannot prove the wiring and wiring harness on the forklift is the same harness or wiring when the forklift was manufactured 13 years earlier.

-As to warnings, a manual that should have been stored in the operator's cab instructed

---

11 On summary judgment, JLG states that it did not manufacture, design or sell the forklift at issue. Nevertheless, JLG proceeds on summary judgment as if it acquired all of the assets/liabilities of Trak (i.e., the forklift) and stands in the shoes of the designer, manufacturer and/or seller for purposes of defending Harris' claims. As such, the Court assesses summary judgment under the rubric of JLG standing in the shoes of the seller, manufacturer and designer of the subject forklift.

operators: "Before Operating, Check: Horn and Backup Alarm."   Harris has presented no evidence that the forklift operator read the manual to then rely on same.

-Harris cannot maintain a breach-of-warranty claim because it is time barred, and he has presented no evidence that the forklift is unsafe or unfit for its ordinary purpose.

In support, JLG relies on the expert opinion of Professional Engineer Barris Evulich (Evulich) who refutes Harris' contentions.   (Doc. 60).

At the outset, a plaintiff's negligence and wantonness claims are distinct from his AEMLD claim, as they have different elements that must be proven. McMahon v. Yamaha Motor Corp., U.S.A., 95 So.3d 769, 772 (Ala. 2012) (citing Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621-623 (Ala. 1991)).   The AEMLD also does not subsume these common law claims.   Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc., 901 So.2d 84, 102 (Ala. 2004); Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 105-106 (Ala. 2003); Tillman v. R.J. Reynolds Tobacco Co., 871 So.2d 28, 35 (Ala. 2003).   However:

> there is nevertheless a measure of commonality between those claims. Specifically, a plaintiff pursuing a products-liability claim against a manufacturer under either theory can succeed only if the plaintiff establishes that the product at issue is sufficiently unsafe so as to render it defective. In an AEMLD case, this is done by proving that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the allegedly defective product….Once established, that is sufficient to succeed on the AEMLD claim. In a negligence case, the plaintiff must establish not only that the product at issue is defective, but also that the manufacturer failed to exercise due care in the product's manufacture, design, or sale….However, even if a manufacturer failed to conduct any testing on a product, there could be no recovery for negligence in a products-liability action if the jury nevertheless concluded that the product was safe. With regard to either an AEMLD claim or a common-law negligence claim, the jury must be persuaded that the product at issue is defective before the plaintiff can prevail.

McMahon, 95 So.3d at 772 (citations omitted).

a.   **Defective Design**

Harris claims the forklift is defectively designed because it had defective backup alarm

wiring, a defective backup alarm wiring harness, and a defectively placed right-side mirror. Specifically, Harris contends the forklift's backup alarm wiring is defective because it is routed to/mounted on a hot engine which can result in the wiring harness touching the engine causing the backup alarm to short/fail, and that the wiring harness is defective because it is run through a synthetic fabric sleeve that "burns through."   Harris asserts the forklift's right side mirror is defective because it is a single mirror and its location is compromised if/when the boom is lowered in a specific "down" position which blocks/obstructs the mirror and creates a blind spot.

To survive summary judgment on his negligence defective design claim, Harris must establish that: 1) JLG owed him a duty; 2) JLG breached that duty; 3) he suffered an injury; and 4) that JLG's negligence was the actual and proximate cause of his injury.   McMahon, 95 So.3d at 771 (citing Ford Motor Co. v. Burdeshaw, 661 So.2d 236, 238 (Ala.1995).   Per Nicholson v. Pickett, 2016 WL 854370, *17 (M.D. Ala. Mar. 4, 2016) (citations omitted):

> "The manufacture of a defective product may be deemed negligence *per se*; however, in the absence of a defective product, a manufacturer is liable under a negligence theory only if he has breached some duty of due care in the manufacture of the product…..In Alabama, a manufacturer has a duty to manufacture a product which is reasonably safe for its intended use and purposes…."[W]hether a party breached a legal duty is a question of fact for the jury."….

"A wantonness cause of action imposes similar requirements [as negligence]….but with the enhanced culpability requirement that the conduct be done recklessly or in conscious disregard of others' rights."…"…wanton conduct depends upon circumstances, and must be based upon facts beyond mere negligence." Nicholson, 2016 WL 854370, *17 (citations omitted).

In Verchot v. Gen. Motors Corp., 812 So.2d 296, 300-01 (Ala. 2001) (emphasis added), the Court explained what must be shown to proceed with a claim under the AEMLD:

"Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purposes and uses. However, the manufacturer of a product is not an insurer against all harm that might be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product. *Casrell v. Altec Industries, Inc.,* 335 So.2d 128 (Ala.1976); *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976); *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457 (5th Cir.1976)[.] In fact, as stated in *General Motors Corp. v. Edwards,* 482 So.2d 1176, 1183 (Ala.1985), *overruled on other grounds, Schwartz v. Volvo North America Corp.,* 554 So.2d 927 (Ala.1989), *the '[f]ailure of a product does not presuppose the existence of a defect.' The fact that someone was injured while using a product does not establish that the product was unreasonably dangerous when put to its intended use. Thompson v. Lee,* 439 So.2d 113 (Ala.1983); *Sears, Roebuck & Co. v. Haven Hills Farm, Inc.,* 395 So.2d 991 (Ala.1981); *Casrell v. Altec Industries, Inc., supra. Proof of an accident and injury alone is insufficient to establish fault under the AEMLD. Thompson v. Lee, supra. Rather, because the AEMLD is a fault-based cause of action, the plaintiff must prove more than the fact that an injury occurred while [the plaintiff was] using the product. Casrell v. Altec Industries, Inc., supra. Under the AEMLD, the plaintiff must affirmatively show a defect in the product. Id. In Sears, Roebuck & Co. v. Haven Hills Farm, Inc., supra, at 995, this Court reviewed the proof necessary to establish a prima facie case under the AEMLD:*

> **"'Liability is not established merely by showing that the product failed in furthering or performing its intended use. *The Plaintiff must prove that the product was substantially unaltered when used by him and must also prove causation in fact, including proof that the defect caused the injury and that the defect is traceable to the Defendant.***
>
> "'"The fact of an injury, of course, does not establish the presence of a defect. Thus, *recovery cannot be predicated on injury alone,* for linking liability to injury rather than to proof that a product is defective creates absolute rather than strict liability."
>
> "'*Edwards v. Sears, Roebuck & Co.,* 512 F.2d 276, 289 (5th Cir.1975). Necessarily, then, the test is met only by a showing that the product's failure of performance is causally related in fact to the product's defective condition at the time of its sale.
>
> "'*The evidence and testimony likely to prove the defect*—that which rendered the product not fit for its anticipated use—*and the defect's link to the Defendant, depend upon the nature of the facts; but ordinarily, expert testimony is required because of the complex and technical nature of the commodity.*'"

*Brooks v. Colonial Chevrolet–Buick, Inc.,* 579 So.2d 1328, 1331–32 (Ala.1991)(emphasis added in first paragraph).

Even assuming the existence of a defect in the design of the forklift backup alarm wiring, Harris must show, for both his negligence and AEMLD claims, that the forklift backup alarm wiring system and harness were in substantially the same condition at the time of Harris' August 2012 accident as it was at the time it left the factory when manufactured in 1999.   See, e.g., CNH America, LLC v. Roebuck, 41 So.3d 41, 47 (Ala. 2009); Casrell, 335 So.2d at 132-133; Thompson v. Hankook Tire Am. Corp., 2015 WL 4524295, *3 (S.D. Ala. Jul. 27, 2015). "Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the [plaintiff's] burden is not sustained." Tanksley v. ProSoft Automation, Inc., 982 So.2d 1046, 1051 (Ala. 2007). An alteration to a product "amounts to an intervening or superseding cause of the injury." Kirk v. Garrett Ford Tractor, Inc., 650 So.2d 865, 867 (Ala. 1994). Alabama holds the manufacturer liable only for defects which existed at the time the product left its control. Casrell, 335 So.2d at 134; Atkins v. Am. Motors Corp., 335 So.2d 134, 140 (Ala. 1976) ("The fault of the manufacturer, or retailer, is that he has conducted himself unreasonably in placing a product on the market which will cause harm when used according to its intended purpose[]").

Harris has not submitted sufficient evidence that the forklift backup alarm wiring was in substantially the same condition in 2012, the time of the accident, as it was in 1999. See, e.g. Banner Welders, Inc. v. Knighton, 425 So.2d 441, 451 (Ala. 1982) (Plaintiff established defendant's liability under the AEMLD through plaintiff's expert witness who testified that the shuttle welder was substantially unchanged at the date of plaintiff's injury).   Harris' expert McEachern did not inspect the forklift wiring or harness located in the engine compartment. (Doc. 69-5 (Dep. McEachern at 89-90)).   Thus, he has no basis to testify that the backup alarm

15

wiring system and the harness were in substantially the same condition at the time of the accident as they were when sold in 1999.   In fact, McEachern acknowledged that he did not know whether the wiring at the time of the accident was the same as at manufacture or whether it was even consistent with the original design, conceding that the wiring could have been wholly replaced. (Doc. 69-5 (Dep. McEachern at 89, 91-93, 102-103)).[12]   McEachern also conceded that there was some evidence that the wiring on the forklift was modified prior to the accident. (Doc. 69-5 (Dep. at 85-88).    In sum, McEachern stated that he could not testify that the forklift wiring system on the day of the accident was in the same condition as when sold.

The only witness who observed the wiring system and harness immediately after the accident was the mechanic Marty McCluer.   McCluer testified that he did not know whether the wiring system and harness were original or had been replaced.   (Doc. 69-2 (Dep. McCluer at 107-109)).

Plaintiff presented no other evidence to carry his burden to prove that the alarm backup wiring and the harness were substantially unaltered at the time of the accident.   Thus, a jury would have no basis to find that the alleged design defect was the cause of the accident since it is unknown whether alterations to the wiring system were undertaken in the intervening 13 years.

As to the claim that the mirror was defective, there is a complete lack of proof that this alleged defect was the cause of the accident.[13]   Although Harris' expert McEachern asserts that the right-side mirror is defective because it <u>can</u> obstruct views when the boom is in a certain position, there is no evidence that this alleged defect actually contributed to the accident.   First,

---

12  McEachern relied upon design diagrams to base his conclusions that it was a defective design.

13  There is a factual dispute as to whether the mirror is the original mirror.

there is no evidence as to the elevation of the boom when the accident occurred; rather there is only evidence of the position of the boom when observed by McEachern.   Second, the forklift operator, Raley, averred that he used both mirrors when backing up and then concluded that, "I later learned that Mr. Harris was behind the lift where the right hand mirror presents a blind spot for the lift operator.   In addition, the right-hand mirror would be blocked by the lift's boom." (Doc. 69-11).   The first problem with this statement is that Harris testified that he was beside the forklift, not behind it. The second problem is that it is not clear whether Raley is asserting that he didn't see Harris because there is a blind spot behind the forklift where the mirror does not reflect or whether the boom was blocking the view of the right mirror.   If he is asserting that the boom was blocking the view of the mirror, then this is inconsistent with his statement that he was using the right mirror at the time of the accident.   If Raley is asserting that Harris was standing in a blind spot that the right mirror is unable to reflect, this assertion is contradicted by Harris and McEachern.   McEachern sat in the forklift cab and took a photograph, (Doc. 60-6 at 2) which McEachern admitted demonstrates the right-side mirror showing a clear view to the area (beside the rear tire) where Harris was reportedly standing at the time of the accident. (Doc. 69-5 (Dep. McEachern at 239-240)).

Upon consideration, Harris has failed to come forth with sufficient evidence to support a requisite element of his design defect claims.   Thus, JLG's motion is **GRANTED** on Harris' negligence/wantonness and AEMLD design defect claims.

### b.    <u>Failure to Warn</u>

Harris contends that the forklift is defective because the Trak manuals did not instruct forklift users/operators to check the functioning of the backup alarm as part of a required daily

prestart inspection, and the manuals failed to warn forklift users/operators of the possibility that the forklift mirrors could become obstructed.   (Doc. 69 at 19-21).   To prevail on summary judgment, Harris has to prove that these failures to warn are the proximate cause of his injuries.

At the outset, the EMI Rough Terrain Forklift Safety Manual contains safety warnings and directions to rough terrain forklift operators for pre-start inspection of the forklift, including:

> **Start Safely**
> ***
> ***_Before Starting Engine:_***
> ***
> Warn all others in the area that you are going to start the forklift.
> ***
> ***_Before Operating, Check_***:
> ***
> **Horn and backup alarms**.
> ***
> **Perform Safe Maintenance**
> **Maintain Your Equipment**
> Forklift malfunctions can often be attributed to improper or lack of regularly scheduled maintenance. The resulting reduction in forklift performance can cause accidents that may lead to fatal injury to yourself and those working with you.
> **Regularly Scheduled Maintenance**
> ***
> Be a responsible operator and follow a regular maintenance schedule as defined in the manufacturer's manual(s). Generally, this includes:
> ***
> Operation of all safety lights, gauges, and warning alarms or horns.

(Doc. 60-2 (Manual at 20-21, 32)) (emphasis in original and emphasis added). Harris argues that the warning should have been more specific – i.e., that the backup alarm wiring needs to be regularly inspected and maintained due to the possibility of burning synthetic fiber covering on the wiring harness.

However, a claim for inadequate warning "'cannot be submitted to a jury unless there is some evidence that the allegedly inadequate warning would have been read and heeded and

would have kept the accident from occurring.'" <u>Chase v. Kawasaki Motors, Corp., U.S.A.,</u> 140 F.Supp.2d 1280, 1287 (M.D. Ala. 2001) (quoting <u>Yarbrough v. Sears Roebuck & Co.,</u> 628 So.2d 478, 482 (Ala. 1993) and <u>Gurley v. American Honda Motor Co.,</u> 505 So.2d 358, 261 (Ala. 1987)). Absent such evidence, Plaintiff cannot establish that the alleged inadequate warnings proximately caused his injuries . <u>Chase,</u> 140 F. Supp. 2d at 1287-1288.   There is no evidence that the forklift operator or JLG's designated mechanic ever read the manuals or any warnings contained therein.   Accordingly, Harris' failure to warn claims fail.   Thus, JLG's motion for summary judgment on Harris' failure to warn claims is **GRANTED.**

## 2. <u>Gross Negligence</u>

Gross negligence is "a degree of negligence[.]"   <u>Craft v. Triumph Logistics, Inc.</u>, 107 F.Supp.3d 1218, 1226 n.* (M.D. Ala. 2015); <u>Miller v. Bailey</u>, 60 So.3d 857, 867 (Ala. 2010) (same); <u>Armistead v. Lenkeit</u>, 160 So. 257, 259 (Ala. 1935) ("Gross negligence is defined as a want of slight care, as distinguished from ordinary care, on the one hand, and less culpable than wanton injury, on the other[]"); <u>Belk v. Thompson</u>, 2012 WL 353763, *2 n.1 (M.D. Ala. Feb. 3, 2012) ("Gross negligence is 'merely a greater degree of negligence[]'").   Because Harris' negligence claim fails, his gross negligence claim also necessarily fails.   Accordingly, the claim is **DISMISSED.**

## 3. <u>Breach of Implied Warranty -- Fitness for a Particular Purpose</u>

Harris alleges that JLG warranted that the forklift was fit for use in its ordinary purpose (Ala. Code § 7-2-315) but breached the warranty by failing to properly ensure it had adequate safety features to prevent foreseeable injuries to individuals.   Specifically, Harris asserts the forklift was not fit for its intended purpose due to the failure of the backup alarm and the blind

spot on the right side mirror created by the boom.

    Section 7-2-315, "Implied warranty: Fitness for particular purpose" provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7–2–316 an implied warranty that the goods shall be fit for such purpose.

Ala. Code § 7-2-315.   "The warranty of fitness for a particular purpose 'is implied if: (1) the seller has reason to know the buyer's particular purpose; (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish the appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment.'"   Tucker v. General Motors Corp., 769 So.2d 895, 902 (Ala.Civ.App.1998), aff'd in part, rev'd in part, Ex parte General Motors Corp., 769 So.2d 903 (Ala.1999) (citations omitted).   In Alabama "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Ala. Code § 7-2-725(1).   Section 7-2-725 specifies that accrual for breach of warranty occurs:

> …when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered; however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs.

Ala. Code § 7–2–725(2).[14]

    JLG contends that Harris' breach of warranty claim is barred by the statute of limitations, Ala. Code § 7-2-725(2), based on the date of the "tender of delivery" of the forklift.   JLG asserts the forklift was sold by Trak International to Gaedcke in 1999 such that to bring a timely claim for breach of warranty, Harris had until 2003 (4 years after the 1999 tender of delivery) to

---

    14 Harris makes no argument about future performance, and/or that the forklift was a consumer good and in Alabama, consumer goods are "used or bought for use primarily for persona, family, or household purposes" CNH America, LLC v. Roebuck, 41 So.3d 41, 44-45 (Ala. 2009) – which a rough terrain forklift is not.

assert a claim.

On summary judgment, Harris presents no argument in response to JLG's time barred contentions, failing to address whether his claims are precluded by the statute of limitations. "[T]he onus is not on the court to develop the...[plaintiff's] argument for [him]…the Eleventh Circuit consistently has made that point clear." Faught v. American Home Shield Corp., 2010 WL 10959225, *4 (N.D. Ala. Jul. 21, 2010) (citing Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000)).   Because Harris has failed to address the statute of limitations argument, he has waived same.   See, e.g., Mitchell v. ConAgra Foods, Inc., 2011 WL 5106046, *2 (11th Cir. Oct. 27, 2011) (citing Transamerica Leasing, Inc. v. Institute of London Underwriters, 267 F.3d 1303, 1308 at n. 1 (11th Cir. 2001)). It appears that since the claim was not filed until July 2014, the breach of warranty claim is time-barred. As such, JLG's motion on Harris' breach of warranty claim, as time barred, is **GRANTED.**

## IV.   Conclusion

Accordingly, it is **ORDERED** that Harris' Motion to Strike Deposition Errata of Brent Hoover (Doc. 59) is **MOOT;** Harris' Motion to Strike Affidavit of Brent Hoover (Doc. 70) is **MOOT in part** and **SUSTAINED in part;** JLG's Rule 56(c)(2) Objections are **OVERRULED in part** and **SUSTAINED in part**; and JLG's Motion for Summary Judgment (Doc. 60) is **GRANTED** as to Harris' negligence, gross negligence, wantonness, AEMLD and breach of warranty claims.

A Final Judgment consistent with the terms of this Order shall be entered by separate

document as required by Rule 58 of the <u>Federal Rules of Civil Procedure</u>.

    **DONE** and **ORDERED** this **2nd** day of **August 2016.**

/s/ Kristi K. DuBose<br>
**KRISTI K. DuBOSE**<br>
**UNITED STATES DISTRICT JUDGE**
